UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| THE ROMAN CATHOLIC DIOCESE OF ALBANY, NEW YORK, | Chapter 11 Case No. 23-10244 |
| Debtor. | |

### DECLARATION OF VERY REV. ROBERT LONGOBUCCO REGARDING (i) STRUCTURE AND HISTORY OF THE ROMAN CATHOLIC DIOCESE OF ALBANY, NEW YORK AND (ii) IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS

**VERY REV. ROBERT LONGOBUCCO**, the Vicar General and Moderator of the Curia of The Roman Catholic Diocese of Albany, New York ("Debtor") makes the within Declaration regarding (i) the organizational structure and history of the Debtor and (ii) in support of the Chapter 11 petition and first day motions pursuant to 28 U.S.C. §1746, and in support thereof states as follows:

1. I am the Vicar General and Moderator of the Curia of the diocese. I have held the position of Vicar General since August 7, 2019 and also serve as Vicar of Catholic Faith Formation and Education as well as pastor of St. Kateri Tekakwitha parish in Schenectady and Niskayuna, New York since 2007.

2. The Debtor is a not-for-profit corporation organized under the laws of the State of New York and pursuant to a Special Act of the Legislature of the State of New York on April 12, 1941 (Chapter 283 Laws of 1941) and is a not-for-profit corporation under Internal Revenue Code §501(c)(3). The Debtor is both a secular organization holding the legal interest and rights of the Debtor as well as a juridic person under The Code of Canon Law of the Roman Catholic Church ("Canon Law").

3.    On March 15, 2023 (the "Filing Date"), the Debtor filed a voluntary petition (the "Petition") of reorganization pursuant to Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §101, et. Seq.) (the "Code").

4.    As the Vicar General and Moderator of the Curia of the diocese, I am authorized to submit the within Declaration on the Debtor's behalf and in support of the Petition and the first day motions and applications (the "First Day Motions") filed contemporaneously with the Petition.

5.    The within Declaration is made based upon my personal knowledge of the matters noted herein, as well as my review of documents and information provided to me by others employed by or associated with the Debtor, my own review of documents and information relevant to the Debtor's organization and operations and my experience in various capacities within the Debtor. If I was called to testify, such testimony would be consistent with the facts set forth herein.

6.    In consultation with counsel for the Debtor, I have reviewed the First Day Motions and respectfully submit that the relief requested is necessary to preserve the ongoing operations of the Debtor by ensuring that the Debtor's employees continue to receive compensation and benefits, that priests, religious, parishioners and those receiving services through the Debtor continue to do so and to preserve the value of Debtor assets for the benefit of creditors. I further respectfully submit that the relief requested in each of the First Day Motions is necessary for a successful reorganization to ensure the necessary services provided by the Debtor continue without interruption. I also support the declaration of Loida Sarabia, the Chief Financial Officer of the Debtor submitted in support of the First Day Motions.

## DEBTOR ORGANIZATION AND STRUCTURE

7.    The geographical region of the diocese was established by Pope Pius IX in 1847. The Debtor is a not-for-profit corporation organized under the laws of the State of New York and

pursuant to a Special Act of the Legislature of the State of New York as more fully described herein and is a not-for-profit corporation under Internal Revenue Code §501(c)(3).  It is one of eight dioceses or archdiocese organized and operating in the State of New York. The geographical region of the diocese administered by the Debtor covers 14 counties with approximately 306,500 Catholics residing within its geographic boundaries who are served through 126 parishes and 4 apostolates.  The geographical region of the diocese covers the upstate New York counties of Albany, Columbia, Delaware, Fulton, Greene, Montgomery, Otsego, Rensselaer, Saratoga, Schenectady, Schoharie, Warren and Washington as well as a portion of southern Herkimer.

8.      The Most Reverend Edward B. Scharfenberger was ordained as the tenth Bishop of the diocese on February 11, 2014.

9.      The Debtor maintains a number of offices through which it carries out its spiritual and administrative functions.  In addition to the office of the Bishop and the general administrative operation of the Debtor, the Debtor provides operational support for the parishes, schools and other similar entities (the "Non-Debtor Entities") that operate within the diocese's geographical region in order to support their spiritual, educational, social and charitable missions.  These include: Catholic Charities, Cemeteries, the Consultation Center, Disabilities and Deaf, Ecumenical and Interreligious Affairs, Evangelization, Faith Formation and Education, Finance Office, Grants and Scholarships, Human Resources, Information Technology, Kateri Institute, Marriage and Family Life, Mental Health, Moderator of the Curia, Pastoral Care Ministry, Parish Services, Pastoral Planning, Pontifical Mission Societies, Prayer and Worship, Protecting Children, Real Property, Respect Life, Safe Environment, Scouting, St. Bernard's School of Theology and Ministry, Stewardship and Development, Tribunal (Canonical Services), Youth and Young Adult Ministry and Vocations.

10.    The diocese is part of the larger Catholic church and community which includes nearly 1.2 billion Catholics worldwide.  The Code of Canon Law[1] governs the structure and organization within the global Church.  Canon Law applies to the relationship between the Church of Rome, ultimately presided over by the Pope, and the various organizations within the Church. The Church writ large is comprised of persons baptized in the Catholic faith which, to the faithful, is a direct gift of the Holy Spirit.  The spiritual, liturgical and secular functions of the Church are carried out by lay persons (that is, those not ordained to the priesthood or members of religious order), deacons, priests and Religious (or members of a religious order who have professed vows of poverty, chastity and obedience), Bishops, Archbishops, Cardinals and the Pope, who, in the Catholic Latin Rite tradition, is the successor to St. Peter.

11.    Canon Law also provides for the organizational structure of the Church of Rome down to local parishes within dioceses throughout the world.  However, despite the hierarchy within the Church, it is not organized like a traditional business corporation but instead operates through dioceses, overseen by bishops appointed by the Pope, within which are parishes overseen by pastors or parish administrators with their own organizational identity, independent ownership of assets and geographical scope.

12.    While the diocese is part of the larger Catholic church and community which includes nearly 1.2 billion Catholics worldwide, the Code of Canon Law governs the structure and organization within the Church at large.  Canon Law applies to the relationship between the Church of Rome, ultimately presided over by the Pope, and the various organizations within the Church.

---

[1] The United States Conference of Catholic Bishops describes Canon Law as "a code of ecclesiastical laws governing the Catholic Church.  In the Latin or Western Church, the governing code is the 1983 Code of Canon Law, a revision of the 1917 Code of Canon Law." https://www.usccb.org/beliefs-and-teachings/what-we-believe/canon-law.

13.     Distinctions between religious entities and the persons who serve within those entities are recognized by Canon law.  These entities, known as "juridic persons", include dioceses, parishes, schools, and similar entities.  Each juridic person holds in its own right property it acquired in its own name and such property is held separately by such juridic person to the exclusion of any other juridic person.

14.     Thus, while there is a hierarchy within the Church, descending from the Pope to bishops overseeing dioceses and then to priests and administrators responsible for parishes, each juridic person within that hierarchy is independently responsible for property owned by the particular juridic person and must use that property to carry out its mission to serve the spiritual and temporal needs of its constituents.

15.     Although they are part of the larger Church, Religious orders are relatively independent in carrying out their respective particular mission and are their own juridic persons under Canon Law.  A number of Religious orders carry out their respective missions within the Albany diocese.

## CORPORATE STRUCTURE OF THE DEBTOR

### A.     The Debtor

16.     As noted above, the Debtor was established by Pope Pius IX in 1847.  The Debtor is organized as a not-for-profit corporation formed under the laws of the State of New York and organized by a Special Act of the New York State Legislature under Chapter 283 of the Laws of 1941 and is a not-for-profit corporation under Internal Revenue Code §501(c)(3).  Pursuant to the Special Act, the members and trustees of the Debtor are the Bishop, the Vicar-General and the Chancellor, all by virtue of their respective offices.

17.     Within the geographic region of the diocese, there are 126 parishes (each a "Parish",

collectively, "Parishes"); 4 apostolates; 18 diocesan, parish and private elementary schools serving 3,128 students; 3 diocesan high schools with 776 students; 3 independent Catholic high schools; 4 colleges; 4 Campus ministry chapters; 3 Catholic hospitals with approximately 750 beds; 6 convalescent, rest homes, guest houses homes for the aged and residences serving over 900 senior citizens; 12 social service agencies with over 830 employees serving over 103,000 people, 15 senior housing communities; 6 retreat houses, 7 communities of priests and 7 communities of Religious brothers; 4 motherhouses for Religious sisters; 1 Novitiate[2] for Religious sisters; 18 Religious communities of women and 2 secular institutes. With possible limited exceptions, each is a separate juridic person.

18. The entities noted below (collectively, the "Non-Debtor Entities") are (a) not under the fiscal or operational control of the Debtor, (b) own their own respective assets, (c) maintain their own books and records, bank accounts and employee payroll, and (d) are not debtors in the Debtor's Chapter 11 case.

**B. Parishes**

19. There are 126 parishes and 4 apostolates[3] within the diocese serving a Catholic population of approximately 306,500 people. There are 157 diocesan priests (79 active/78 retired), and 110 ordained deacons[4] (80 active, 30 retired) ministering to these parishes.

20. Each parish is a separate corporation (a "Parish Corporation") formed under the Religious Corporation Law of the State of New York, is a juridic person. and maintains its own

---

[2] A Novitiate is a place housing those in the process of professing final vows to join a Religious organization.
[3] An "apostolate" is an organization within the Church serving a particular community. The apostolates within the diocese are: the Black Catholic Apostolate, the Korean Apostolate, the Spanish Apostolate and the Vietnamese Apostolate.
[4] A Deacon is a minister within the Church who assists a priest in his pastoral and administrative duties, but is not ordained to the priesthood. Canon Law distinguishes between "permanent" deacons, that is lay persons who receive the sacrament of holy orders but are not to be ordained as priests, and "transitional" deacons, or men studying for the priesthood who intend to eventually be ordained as priests.

internal management, financial records and employee payroll.  Pursuant to Article 5 of the Religious Corporation Law, each Parish Corporation is governed by a board of trustees or parish council comprised of the Bishop, the diocese's Vicar General, the Parish Pastor and two lay members of the Parish.  Pursuant to the Religious Corporation Law, the Bishop is the president of each Parish Corporation, the Vicar General is the vice president and the Pastor is the secretary-treasurer, all by virtue of their respective offices.

21.     Each parish also owns its real and personal property separate and apart from the Debtor, oversees its own operations through its parish council and prepares its own operating budget.  16 Parishes operate their own schools, which serve 3,210 students.

### C. Catholic Schools

22.     There are 17 parish elementary schools and 1 private elementary school within the diocese.  There are a total of 6 Catholic high schools within the geographic boundaries of diocese, including 3 diocesan high schools educating 776 students and 3 private high schools serving 1,131 students.

23.     The high schools are: Catholic Central School, Notre Dame-Bishop Gibbons School, and Saratoga Central Catholic School.   Catholic Central School is the successor to Catholic Central High School and St. Ambrose School and in on the campus of St. Ambrose Church, Latham, New York.  Notre Dame-Bishop Gibbons is owned by Burke Community Service Corporation.  Saratoga Central Catholic School is owned by St. Peter's Church, a Parish in Saratoga Springs.  Independent Catholic schools operating within the geographical region of the diocese are: Lasalle Institute, Christian Brothers Academy, the Academy of the Holy Names and St. Gregory's School.  Each school is separately chartered by the New York State Board of Regents, independent of the Debtor, owns its assets separate from the Debtor and maintains its

own board of trustees and administration.

### D. Ministries

24.     Ministries within the diocese, each of which is a separate corporation and juridic person,  and is organized under the Not-for-profit Corporation Law of the State of New York or its predecessor statute and each a separate corporation include:

### i.   Catholic Charities of the Diocese of Albany ("Catholic Charities")

25.     Catholic Charities is one of the largest, private, social services agencies in the region, helping more than 89,000 people each year in the fourteen counties of the Debtor.  It operates to address basic human need at all stages of life regardless of race, religious belief, ethnicity, or lifestyle with special emphasis on the poor and vulnerable in our society. Catholic Charities offers a wide spectrum of services, from addressing basic needs such as food, clothing, and shelter; to more specialized needs such as mental health counseling, prison support services, programs for low-income families, and disaster assistance.  Its focus is on helping the most vulnerable in the communities which it serves, including people with developmental disabilities, pregnant and parenting teens, the unemployed, victims of domestic violence, and the homeless. Catholic Charities advocates on behalf of the poor and vulnerable and collaborates with others to build a more just society.

26.     Catholic Charities is a not-for-profit corporation organized under the Not-for-profit Corporation Law of the State of New York and was formed on December 31, 1923.  It is operated by its own executive officers and board of trustees.

### ii.   McCloskey Community Service Corporation ("McCloskey")

27.     McCloskey was formed in 1977 for the purposes of (i) receiving and administering funds for educational and charitable purposes including the support, encouragement and

supervision of programs by other non-profit organizations which train persons for non-professional occupations involving the delivery of services to persons in need; and (ii) to collect, accept and receive money or property, real or personal, from any person, corporation or other entity, public or private; and to hold, manage, allocate and disburse the same and any earnings therefrom for the purposes of the corporation in conformity with the terms and conditions under which the same was received. The members of the corporation consist of the Bishop and Vicar General of the diocese by virtue of their offices, the Secretary for Health and Social Services of the diocese and two other persons designated by the Bishop.

### iii. Burke Community Service Corporation ("Burke")

28.      Burke was formed in 1990 for the purposes of (i) receiving and administering funds for educational and charitable purposes including the support, encouragement and supervision of programs by other non-profit organizations which train persons for non-professional occupations involving the delivery of services to persons in need; and (ii) to collect, accept and receive money or property, real or personal, from any person, corporation or other entity, public or private; and to hold, manage, allocate and disburse the same and any earnings therefrom for the purposes of the corporation in conformity with the terms and conditions under which the same was received. The members of the corporation consist of the Bishop and Vicar General of the diocese by virtue of their offices and three additional members designated annually by the Bishop.

### iv. Cusack Community Service Corporation ("Cusack")

29.      Cusack was formed in 1999 for the purposes of (i) enhancing individual and family life with an emphasis on their physical environment and social interaction, including alone or in concert with others, own, plan, coordinate, sponsor, develop, construct, operate and manage housing for those in need, provide daily living assistance and maintenance, and contract for social

and living skills services for residents; and (ii) doing any other act or thing incidental to or connected with the foregoing purposes or in the advancement thereof, but not for the pecuniary, profit or financial gain of its members, directors, officers or any private person.  The members of the corporation are the Bishop and Vicar General of the diocese by virtue of their offices and one lay person.  The corporation is managed by a board of directors consisting of not less than five nor more than eleven directors.

### v.  McNeirny Community Service Corporation ("McNeirny")

30.     McNeirny was formed in 1998 for the purposes of (i) receiving and administering funds for educational and charitable purposes including the support, provision and supervision of programs and services by and for other non-profit and religious organizations which are involved in the delivery of services to persons in need.  McNeirny serves as the payroll administrator for priest salaries, stipends and benefits. The directors of the corporation are the Bishop and Vicar General of the diocese based upon their offices and three lay members.

### vi.  Albany Catholic Youth Association, Inc. ("ACYA")

31.     ACYA was formed in 1915 for the purpose of developing the Christian character and usefulness of its members and to improve the spiritual, mental, social and physical condition of young men and women.  The members of the corporation are the Bishop, Vicar General and Chancellor of the diocese by virtue of their offices and not more than four additional members elected on an annual basis.

### vii.  Albany Catholic Press Association, Inc.  ("Albany Catholic Press")

32.     Albany Catholic Press was formed in 1926.  The purpose of the corporation is to cultivate and encourage a taste for literature, music and the arts by the publication and circulation of books, pamphlets, journals, magazines, newspapers, periodicals and other literary works and by

giving or causing to be given pageants, lectures, concerts and other entertainments.  The business

of the corporation is governed by a board of directors consisting of not more than 18 persons,

including the Bishop and Chancellor of the diocese by virtue of their offices.  The corporation

publishes The Evangelist, the official newspaper of the diocese. The members of the board of

directors are the Bishop and Chancellor of the diocese by virtue of their offices and no more than

16 additional members.

> **viii.    Catholic Cemeteries of the Roman Catholic Debtor of Albany, New York ("Catholic Cemeteries")**

33.    Catholic Cemeteries is a not-for-profit corporation organized under New York law

and was incorporated in 2009 and is governed by its own board of directors separate and distinct

from the Debtor.   It operates 24[5] cemeteries within the diocese.   The corporation's purposes

include: (i) interment of the deceased and to own, lease, develop, operate, supervise consult with,

and/or manage, whether owned by the corporation or otherwise, one or more Roman Catholic

cemeteries associated with the diocese; and (ii) provide Masses and other Roman Catholic

religious services from time to time at one or more of the cemeteries within the geographical

boundaries of the diocese.   The members of the corporation consist of the Bishop, Vicar

General/Moderator of the Curia and Chancellor of the diocese by virtue of their offices.

> **ix.  St. Agnes Cemetery ("St. Agnes")**

34.    St. Agnes is a not-for-profit corporation organized under New York law and was

incorporated in 1899.  St. Agnes owns, operates and maintains a 108 acre cemetery located at 48

Cemetery Avenue, Menands, New York that was first established in 1867.   The corporation's

purposes include: (i) acquiring and holding land for the exclusive use as a cemetery; and (ii)  taking

---

[5] Two cemeteries included in this count are owned by separate, not-for-profit corporations: St. Agnes Cemetery and Most Holy Redeemer Cemetery noted at section ix and x and described herein.

and holding any grant, donation, or bequest of property, real or personal, upon trust, to apply the income thereof for the maintenance of such cemetery.

### x.  Most Holy Redeemer Cemetery ("Holy Redeemer")

35.    Holy Redeemer is a not-for-profit corporation organized under New York law and was incorporated in 1922.  Holy Redeemer owns, operates and maintains a cemetery located at 2501 Troy Schenectady Road, Niskayuna, New York, which is the corporation's purpose.  The Bishop, Vicar General and Chancellor of the diocese are trustees and members of the corporation by virtue of their offices with the board consisting of not more than fifteen members in total.

### xi.  Clerical Fund Society of the Roman Catholic Debtor of Albany, New York ("Clerical Fund Society")

36.    Clerical Fund Society is a not-for-profit corporation organized under New York law and was incorporated in 1884.  The corporation's purposes are to assist in providing support of members who, by sickness, accident or old age, are incapacitated from the performance of their priestly duties; and to assist in defraying the expenses of rehabilitation of members suffering from any form of sickness, and to defray the funeral expenses of indigent deceased members.

37.    The officers of the corporation consist of the Bishop, Vicar General and Chancellor of the diocese by virtue of their offices and eight Councilors nominated by the Bishop and elected by ballot at the annual general meeting of the corporation.

### xii. St. Catherine's Center for Children ("St. Catherine's")

38.    St. Catherine's is a not-for-profit corporation organized under New York law and was incorporated in 1913 for the purposes of: (i) establishing and maintaining an institution, agency, boarding homes and group homes for the care of children and place children in need in foster homes; (ii) establishing, operating and maintaining day care centers and day service centers or day treatment programs for emotionally disturbed children; (iii) establishing, operating and

maintaining referral services and an emergency shelter for children and families; (iv) establishing, operating and maintaining preventive service programs for families whose children are at risk of requiring out-of-home placement; and (v) establishing, operating and maintaining an educational facility for the instruction of handicapped and/or multi-handicapped children.

39.     The members of this corporation consist of the Bishop and Vicar General of the diocese, the director of Catholic Charities (each by virtue of their respective offices) and one additional person designated by the Bishop.

### xiii.      Teresian House Housing Corporation ("Teresian House Housing")

40.     Teresian House Housing is a not-for-profit corporation organized under New York law and was incorporated in 1999.

41.     The corporation operates for the purposes of: (i) constructing, supervising, maintaining and operating housing facilities for use and occupancy by elderly persons capable of living independently and providing such persons with social, recreational, housekeeping, food services and laundry services; (ii) providing elderly persons housing and a secure environment and providing for the financial security of residents through residential facilities specifically designed to meet the combination of physical, emotional, recreational, social, religious and similar needs; (iii) providing assisted living and supportive services to elderly persons capable of living independently by who may require occasional assistance; (iv) enabling residents to remain in the most independent setting through a combination of community based services and specifically designed supportive residence; (v) serving as a model care and service provider to inspire others in treating and caring for aged persons; and (vi) promoting social, physical and mental well-being of residents entrusted to its care.

42.     This corporation consists of the Bishop and Vicar General of the diocese by virtue

of their offices and counsel for the diocese.  The corporation is managed by a board of directors of not less than three (3) nor more than nine (9) directors.

### xiv.    Teresian House Nursing Home Company, Inc. ("Teresian House Nursing Home")

43.    Teresian House Nursing Home is a not-for-profit corporation organized under New York law and was incorporated in 1971.

44.    The corporation operates a nursing and residential health care facility.

45.    The members of this corporation consist of the Bishop, Vicar General and Chancellor of the diocese, the Prioress General and Vicar General of the Carmelite Sisters for the Aged and Infirm.  The general management of the corporation is vested in a board of directors consisting of not less than eleven (11) nor more than twenty-four (24) members.

### xv. Teresian House Foundation Inc. ("Teresian House Foundation")

46.    This corporation is a not-for-profit corporation organized under New York law and was incorporated in 1990.

47.    The corporation was established to develop effective community relations programs and fundraising activities on behalf of the residents and staff of the Teresian House Nursing Home.

48.    The Teresian House Nursing Home is the sole member of the corporation. Management authority is vested in a board of directors consisting of not less than fifteen (15) nor more than twenty-five (25) members.

### xvi.    DePaul Housing Management Corporation ("DePaul")

49.    This corporation is a not-for-profit corporation organized under New York law and was incorporated in 1979.

50.    The corporation's purpose is to develop and operate senior housing communities.

51.    The members of the corporation consist of the Bishop, Vicar General and Chancellor of the diocese by virtue of their offices.  The general management of the corporation is vested in a board of directors consisting of not less than five (5) nor more than thirty (30) members.

### xvii.    Re-Igniting Our Faith Foundation, Inc.

52.    This corporation is a not-for-profit corporation organized under New York law and was incorporated in 2017.

53.    The corporation's purpose is to operate and maintain a foundation providing a broad range of assistance and services to meet the spiritual, social and economic  needs  of  the parishes and people within the geographical bounds of the Diocese of Albany, including: (a) to fuel the vision of growing and enhancing the Catholic community of faith for current and future generations throughout the Roman Catholic Diocese of Albany. (b) to enhance local parishes by meeting and assisting an increased demand for vocations, providing continued care for retired priests, increasing evangelization, and developing additional resources for Catholic schools. (c) achieve any other charitable or benevolent purposes consistent with such purpose.

54.    The members of the corporation consist of the Bishop, the Vicar General and the Chief Executive Officer of the corporation by virtue of their offices and two (2) additional members designated annually by the Bishop.  The general management of the corporation is vested in its board of trustees consisting of a maximum of twenty-five (25) members, including the Bishop and Vicar General of the diocese by virtue of their offices.  The corporation's legal counsel shall be an ex officio member of the board of directors, without a vote.

55.    **Debtor Investment Accounts.**  In addition to its Bank Accounts, the Debtor

maintains an interest in the following investment accounts (the "Investment Accounts"), as more fully described below.

### i. Foundation of the Roman Catholic Debtor of Albany, New York, Inc.

56.     The Foundation of the Roman Catholic Debtor of Albany, New York, Inc. (the "Foundation") is a not-for-profit corporation organized under the Not-for-profit Corporation Law of the State of New York, is governed by its own By-laws and Certificate of Incorporation and in conformity with Canon Law and the New York Prudent Management of Institutional Funds Act. The Foundation is a separate legal entity from the Debtor.  Its liabilities are solely those of the Foundation and are not guaranteed by the Debtor or the Roman Catholic Church.  In turn, the Foundation does not guaranty the debts and obligations of the Debtor.  As of the Filing Date, the Foundation held approximately $8,141,862 in Debtor funds.

57.     The Foundation has a pooled investment fund established on February 20, 1996, for the purpose of offering the Debtor and Non-Debtor Entities the opportunity to invest collectively to maximize investment opportunities and returns consistent with duties of stewardship following the mandates of Canon Law and the New York Uniform Prudent Management of Institutional Funds Act.  Funds invested are generally those that the investors do not reasonably anticipate having to expend for five years or more.  The investments are managed by Bank of America and are overseen by the Foundation's Board of Directors.  Income is allocated to investors based on the percentage of the net asset value of their individual funds to the total investment balance.

58.     The corporation is managed by a board of directors consisting of not less than three (3) nor more than five (5) members, including the Bishop, Vicar General and Chancellor of the diocese by virtue of their offices.

59.    The Foundation's By-laws provide that the board of trustees of the Foundation may appoint an Investment Advisory Committee.  In turn, the Foundation has retained Bank of America as its investment advisor to manage the assets invested with the Foundation, consistent with the Foundation's By-laws, Certificate of Incorporation and fiduciary duties as stewards of the funds entrusted to it by its participants.

60.    The Foundation, through Bank of America, maintains a separate account with respect to each investor.  Foundation investors deal directly with the Foundation to deposit funds for investment with the Foundation.  Investor funds are payable to or otherwise transferred directly from the individual investor to the Foundation.  Checks from investors are made payable to the Foundation and are transferred without deposit to any Debtor Bank Account directly to Bank of America.  In turn, Bank of America invests funds received consistently with the Foundation's investment policies.

61.    The Foundation was formed, and operates exclusively, to support and aid, whether directly or indirectly, the religious, charitable and educational mission of the Catholic Church, as carried out through the means of the Debtor and participating Non-Debtor Entities and the programs and activities of those organizations.

62.    As an accommodation, the Debtor provides bookkeeping services to the Foundation.  As compensation for these services, the Foundation makes an annual grant from Foundation funds to the Debtor's stewardship office.

### i.  Diocesan Investment and Loan Trust ("DILT")

63.    The Diocesan Investment and Loan Trust ("DILT") was created in 2007 and is managed by a board of advisors separate and distinct from the Debtor.  The DILT is a short-term investment program separate and apart from the Debtor that is essentially a savings account in

which the Debtor, and Non-Debtor Entities participate as depositors.  The DILT is a trust account pursuant to a Declaration of Trust and is subject to Canon Law, the Internal Revenue Code and New York Estates, Powers and Trusts Law.  Participating depositors receive a 2% annual return on their deposits, maintain ownership of their respective deposits to the DILT and have the unilateral right to withdraw their funds on demand.  While depositors are entitled to receive the annual 2% income payment and the return of their respective deposits to the DILT, income and appreciation in value of the funds held in the trust in excess of those amounts is the property of the DILT and depositors have no right to a pro rata share of the appreciation in value of the DILT funds.  In addition, from time to time the DILT has loaned funds to participating depositors, generally for capital expenditures and improvements to the depositors' facilities.  Depositors are obligated to repay any loans from the DILT pursuant to the terms of their respective loan documents.  The Vicar General of the Debtor, Father David LeFort, is the sole trustee of the DILT.

64.    The DILT maintains its own books and records and it is not a guarantor of the Debtor's debts or other obligations.  Each depositor's interest in the DILT is separately and discretely accounted for.  The Debtor's share of the funds held by the DILT are approximately $8,700,000, which includes the Debtor's allocation of funds for its self-insured insurance retention to pay claims for which the Debtor is determined to be liable, including general liability, property damage, workers' compensation and payments made to date to settle claims brought by certain CVA Claimants.

65.    The DILT pays the Debtor an annual fee in the amount of $65,000.00 for the administrative services provided by the Debtor to the DILT including accounting and bookkeeping, information technology costs and Diocesan business equipment used to provide those administrative services.

### i. Unemployment Fund Investment Fund/ Trust

66.     As noted above, the Debtor maintains assets in a non-discretionary trust for the reimbursement of unemployment benefits to the State of New York.  The assets are maintained in the name of the Debtor for its benefit and the benefit of participating Non-Debtor Entities at Trustco Bank.

### i. Other Debtor Investment Holdings

67.     The Debtor also maintains, and has pledged, **an account/one or more accounts** with Trustco Bank ("Trustco") to secure a letter of credit in the amount of $4,316,716.00 issued by Trustco for the benefit of The New York State Workers' Compensation Board with respect to the Debtor's workers' compensation insurance program.

### v. Restricted Funds

68.     Permanently restricted funds of the Debtor, with the exception of the Seminary Endowment funds, are invested with the Foundation.  For such endowments, the Debtor applies the Foundation's Investment and Distribution Policy (the "Policy").  In accordance with the Policy, distributions are determined by the Board of Trustees for the Foundation subsequent to year-end based upon the Policy and spending rate approved by the trustees. The Policy allows a maximum distribution of the lesser of the earned income amount or the calculated distribution utilizing the previous three fiscal years average quarterly market values of the individual donor fund accounts multiplied by the approved spending rate.  The Seminary Endowment fund spending policy has been determined to be limited to the annual investment earnings of the underlying investments. As noted above, these endowed funds are donor-restricted as is the use to which income from these endowments may be utilized.

69.     Through its investment advisors, the Debtor has developed a long-term strategy to

manage its funds for the benefit of Debtor programs or the particular programs or services designated by donors in connection with their donations.

70.     It is respectfully submitted that maintaining the current investment advisors and investment strategies developed over a number of years is in both the Debtor's and its creditors' best interests.  Canon Law compels the Debtor to be a steward of its assets for the benefit of those it serves.  The Debtor has developed a conservative approach to manage its assets so as to be able to ensure that it is able to provide services to the larger community in which it operates and for those whom it serves.

## **EVENTS LEADING TO BANKRUPTCY FILING**

71.     On January 28, 2019, the New York State Legislature passed the Child Victims Act (the "CVA").  On February 14, 2019, Governor Andrew Cuomo signed the legislation into law. In general, the CVA re-opened the applicable statute of limitations for claims of sexual abuse that had otherwise expired. Victims covered by the CVA for whom the applicable statute of limitations had expired were given a one-year period until August 14, 2020 within which to file a CVA claim. As a result of the COVID-19 pandemic, that statute of limitations was further extended until August 14, 2021.  In addition, the CVA provided that for any claim that had not expired under the prior statute of limitations starting when the victim turned 18 years of age, that victim has until reaching age 55 to file a CVA claim.

72.     From August 14, 2019 until the Filing Date, a total of 440 actions (the "CVA Actions") were filed in which the Debtor is named as a defendant.

73.     As of the Filing Date, over 50 CVA Actions have been resolved and settled by the Debtor.  Applicable insurance coverage under policies held by the Debtor have contributed to that compensation to the extent of coverage afforded under a particular policy.  However, a number of

insurance carriers that wrote policies for the Debtor have disclaimed coverage or are providing a defense to the Debtor under a reservation of rights with respect to both defense and coverage. To the extent that coverage is not afforded to the Debtor under a particular policy or policy period based on the conduct of the alleged offender the Debtor has paid settlement amounts from its reserves for self-insurance.

74.     In addition, on May 24, 2022, New York Governor Kathy Hochul signed into law the Adult Survivors Act, which established a one-year window beginning on November 24, 2022 within which survivors of abuse that occurred when the survivors were over the age of 18 are able to commence actions on their claims regardless of whether the otherwise applicable statute of limitations had previously expired. Conceivably, the Debtor and Non-Debtor Entities may be named as defendants in actions brought under the Adult Survivors Act.

75.     By seeking bankruptcy relief, the Debtor is not attempting to avoid responsibility or liability for the misconduct of diocesan clergy or the Debtor itself for the damages caused to, and the faith lost by, those who were victimized by those within the Church who took advantage of their unique positions as spiritual leaders to the detriment of the innocent, particularly children.

76.     The Debtor does not, however, have unlimited resources to both compensate those injured by the Church's failings and to continue to provide the vital services to the communities in which it serves. In addition to the availability of certain assets of value, the Debtor has insurance coverage to which it continues to avail itself as it attempts to compensate child victims of abuse. While the Debtor has a moral duty to compensate those damaged by its failings, it must do so equitably to ensure that all victims receive compensation for their losses, realizing that financial compensation likely is little solace for the loss of trust and faith. By its Chapter 11 filing, the Debtor is attempting to balance, as best it can with the resources available to it, the need to

equitably compensate all victims of abuse, provide for payment of the claims of its other creditors and continue to provide the spiritual, educational and social services consistent with the Church's mission to spread the Gospel and cultivate a personal relationship with Jesus Christ, strengthen faith communities, develop vocations, care for the poor and most vulnerable in our communities and actively engage the diocesan agencies to support all of those missions.

77.      In 2002, the Debtor established a program for the confidential reporting of claims of sexual abuse by members of the clergy and the formation of a  Diocesan Review Board, which advises the Bishop in his assessment of allegations of sexual abuse and his determination of the suitability of clerics for ministry, reviews diocesan policies for dealing with the sexual abuse of minors and offers advice on all aspects of cases alleging sexual abuse, both retrospectively and prospectively.   Reported claims of abuse were investigated and reported to appropriate civil authorities including district attorneys to investigate such claims and determine whether criminal prosecution was supported.   The program also provided a mechanism to provide monetary compensation to victims whose claims were substantiated.

78.      The Debtor has, since the abuse crisis within the Church was revealed, taken a number of steps to address its failings.  These include:

a.   creating a confidential referral service for reporting allegations of abuse to the Assistance Coordinator appointed by the Debtor who, in turn, will timely report those allegations to the appropriate District Attorney.  In the event that a District Attorney declines to, or is unable to, investigate reported allegations, the Debtor will follow its own protocol for processing an allegation of sexual abuse.

b.   establishing a Diocesan Review Board to receive and independently investigate claims of abuse against clergy and others associated with the Debtor;

c.  forming the Office of Safe Environment, which oversees compliance with the Charter for the *Protection of Children and Young People*, by administering the Safe Environment awareness training (CMG Connect) and conducting background screening programs for all diocesan and parish staff as well as volunteers who work with children.

d.  acknowledging the Debtor's past failures to protect its most vulnerable members, its children, by not proactively referring allegations of abuse to the appropriate authorities and failing to root out those members of the clergy and Religious who violated not only the law but the tenets of the faith on which the Church is built.

e.  publishing a list on the Debtor's website disclosing the names of clergy associated with the Debtor who have been credibly accused and removed from ministry and those who were deceased or resigned prior to a finding of reasonable grounds by the Diocesan Review Board due to sexual misconduct with a minor.

79.   The Debtor established the Sex Abuse Task Force in April, 2019 to focus on ways to support survivors and review and reform diocesan policy and protocols.  Unfortunately, due to Covid-19 restrictions, the task force was temporarily suspended.

80.   While not a precipitating cause of the Chapter 11 filing, the Debtor is a defendant in *Mary Hartshorne et al. v. Roman Catholic Diocese of Albany, New York,* Supreme Court, Schenectady County, Index Nos. 2019-1989 and 2019-0653 (the "St. Clare's Action") asserting claims against the Debtor and St. Clare's Corporation, among other defendants, alleging causes of action of breach of contract and breach of fiduciary duty with respect to the management and funding on the St. Clare's Hospital Retirement Income Plan, and *People of the State of New York, by Letitia James, Attorney General of the State of New York v. Roman Catholic Diocese of Albany,*

*New York, et al.*, Supreme Court Schenectady County, Index No. 2022-830, asserting causes of action including breaches of fiduciary duty and provisions of the New York Not-for-profit Corporation Law and Estate, Powers & Trusts Law related to the St. Clare's Corporation pension fund (the "AG Action"). The St. Clare's Action has been consolidated with the AG Action for discovery and trial.

81.    Thus, the Chapter 11 process will afford the Debtor (i) the opportunity to maximize its assets for the benefit of abuse survivors, (ii) provide a process to administer claims of creditors (both victims of abuse and parties who, in good faith, provided goods and services to the Debtor), (iii) create a process for victims to assert their claims and have them fairly and impartially considered and compensated; (iv) give the Debtor some certitude in providing for claims not yet adjudicated and whose amounts have not yet been determined; and (v) the ability to provide assurances to those in the community who rely on the vital services it provides that those spiritual, educational and social services needs will continue to be met.

82.    The Debtor, along with counsel representing CVA Claimants and the Debtor's Insurers, participated in a mediation program in the context of the CVA Actions overseen by New York State Supreme Court Justice L. Michael Mackey. As noted by Bishop Sharfenberger in his public statement in connection with the settlement global mediation plan proposed by the Debtor as part of that mediation program, the Debtor's goal was then, and is now, to compensate victims as fairly and quickly as possible. While the plan proposed in the state court was not ultimately accepted, the Debtor continues to believe that a prompt process to approve a plan in this case is the best outcome for all involved as it will maximize the recovery by the victims while providing a means for the Debtor to continue to enhance its programs to protect the most vulnerable among us and also serve the continuing needs of those who depend on the continuity of the Debtor's

programs.

       Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 15, 2023
       Albany, New York

<u>/s/Father Robert Longobucco, V.G.</u>
Very Rev. Robert Longobucco
Vicar General and Moderator of the Curia of
The Roman Catholic Debtor of Albany, New
 York