UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    The Roman Catholic Diocese of                   Case No. 23-10244
    Albany, New York,                                       Chapter 11

                                        *Debtor*.

APPEARANCES:

Francis J. Brennan, Esq.
Whiteman Osterman & Hanna LLP
*Attorney for Debtor*
80 State Street, 11th Floor
Albany, New York 12207

Nathan W. Reinhardt, Esq.
Skarzynski Marick & Black LLP
*Attorney for Certain Underwriters at Lloyd's, London and*
*Certain London Market Insurance Companies*
663 West Fifth Street, 26th Floor
Los Angeles, California 90071

James P. Ruggeri, Esq.
Ruggeri Parks Weinberg LLP
*Attorney for Hartford Accident and Indemnity Company and*
*Hartford Fire Insurance Company*
1875 K Street NW, Suite 600
Washington, District of Columbia 20006

Edward L. Schnitzer, Esq.
Womble Bond Dickinson
*Attorney for The National Catholic Risk Retention Group, Inc.*
950 Third Avenue, Suite 2400
New York, New York 10022

Edwin H. Caldie, Esq.
Stinson LLP
*Attorney for the Official Committee of Tort Claimants*
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402

-1-

Jesse J. Bair, Esq.
Burns Bair LLP
*Special Insurance Counsel for the Official Committee of Tort Claimants*
10 E Doty Street, Suite 600
Madison, Wisconsin 53703

Cynthia S. LaFave, Esq.
LaFave, Wein, Frament & Karic, PLLC
*Attorney for Certain Tort Claimants*
1 Wall Street
Albany, New York 12205

Taylor Stippel Sloan
Jeff Anderson & Associates PA
*Attorney for Certain Tort Claimants*
363 7th Avenue, 12th Floor
New York, New York 10001

Amy C. Keller, Esq.
Lipsitz Freen Scime Cambria, LLP
*Attorney for Certain Tort Claimants*
42 Delaware Avenue, Suite 120
Buffalo, New York 14202

Gerald J. Williams, Esq.
Williams Cedar, LLC
*Attorney for Claimant 20267*
One South Broad Street, Suite 1510
Philadelphia, Pennsylvania 19107

Meghan M. Breen, Esq.
Lemery Greisler LLC
*Attorney for the Official Committee of Unsecured Creditors*
677 Broadway, 8th Floor
Albany, New York 12207

Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM DECISION AND ORDER**

Currently before the Court are various motions to disallow claims (the "Motions to Disallow") and motions to file pleadings under seal (the "Motions to Seal"). The Court has

jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[1] Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

On June 18, 2025, Certain Underwriters at Lloyd's, London and London Market Companies (collectively, "LMI") filed redacted Motions to Disallow several claims filed in this bankruptcy case against the Roman Catholic Diocese of Albany, New York (the "Diocese"). ECF Nos. 1703, 1707, 1712, 1716, 1720, 1724, 1728, 1732, 1736, 1740, 1744, 1748, 1752, 1754, 1758, 1762, 1766, 1770, 1774, 1778, 1782, 1786, 1790, 1794. In addition, LMI also filed Motions to Seal requesting permission to file unredacted versions of the Motions to Disallow under seal. ECF Nos. 1705, 1709, 1714, 1718, 1722, 1726, 1730, 1734, 1738, 1742, 1746, 1750, 1756, 1760, 1764, 1768, 1772, 1776, 1780, 1784, 1788, 1792, 1796. Additional Motions to Disallow and Motions to Seal were filed by LMI in the following days.[2] ECF Nos. 1808, 1810, 1829, 1831, 1833, 1835, 1837, 1839, 1841, 1843, 1849, 1851, 1853, 1855, 1857, 1859, 1861, 1863, 1865, 1867, 1869, 1871, 1873, 1875, 1877, 1879, 1881, 1883, 1885, 1890, 1892.

On July 14, 2025, Hartford Accident and Indemnity Company and Hartford Fire Insurance Company (collectively, "Hartford") filed joinders to several of LMI's Motions to Disallow. ECF Nos. 1931–44. Hartford also filed separate Motions to Disallow and Motions to Seal. ECF Nos. 1945, 1948, 1951, 1954, 1957, 1960, 1963, 1966, 1971, 1974, 1977, 1980, 1984, 1987, 1990, 1993, 1998, 2001, 2004, 2007.

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2025) (the "Bankruptcy Code").

[2] LMI subsequently withdrew some of its Motions to Disallow and Motions to Seal. *See* ECF Nos. 1826, 1896.

On July 16, 2025, the Official Committee of Tort Claimants (the "Tort Committee") filed opposition to the Motions to Disallow and Motions to Seal. ECF No. 2028. On July 21, 2025, Hartford filed a reply to the Tort Committee's opposition. ECF No. 2057. On July 22, 2025, LMI filed a joinder to Hartford's reply. ECF No. 2061.

On July 23, 2025, the Court held a hearing on several of the Motions to Seal and raised the question of the insurance companies' standing to file the Motions to Seal and Motions to Disallow. ECF No. 2062–63. The Court then invited the parties to submit additional briefs on that particular question. ECF No. 2065. On August 8, 2025, the Court received briefs from Claimant 20267[3], Hartford, the Tort Committee and LMI[4]. ECF Nos. 2108, 2117–18, 2120, 2123. On August 22, 2025, the Court received responsive briefs from the Diocese, Hartford, Tort Committee and LMI. ECF Nos. 2142, 2145, 2148–49. The Court also received a joinder to the Tort Committee's brief by certain tort claimants. ECF Nos. 2143. The Court held a hearing on the Motions to Seal and Motions to Disallow on August 27, 2025, after which the matters were placed on reserve. ECF No. 2162.

## ARGUMENTS

LMI and Hartford (collectively, the "Insurers") argue they have standing to bring the Motions to Seal and Motions to Disallow. According to the Insurers, "LMI and Hartford have the statutory right to object to claims even if they have not agreed to waive all coverage defenses and to pay any and all claims that may be allowed." EF No. 2117 at 8. The Insurers also argue that, if constitutional and prudential standing requirements apply in this situation—which the Insurers

---

[3] While not an official joinder, Claimant 20267's brief also indicates that they join the position of the Tort Committee. ECF No. 2108 at 2.

[4] LMI also filed a joinder to Hartford's brief. ECF No. 2121.

believe do not—that the Insurers would satisfy them. *See* ECF No. 2117 at 10; ECF No. 2123 at 8.

The Tort Committee and Claimant 20267, on the other hand, argue that Insurers lack the requisite standing to bring the motions. The Tort Committee contends that "insurers who persist in disputing their liability for bankruptcy claims are only parties in interest to the extent that their 'financial exposure may be directly and adversely affected by a plan . . . .'" ECF No. 2120 at 4 (quoting *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 284 (2024). Should the Court find that the Insurers do bear financial responsibility, the Tort Committee argues that the Insurers must still satisfy constitutional and prudential standing requirements. ECF No. 2120 at 4. Moreover, the Tort Committee contends that this Court has "equitable discretion" and could choose to limit the Insurers' involvement in these matters or permissively abstain from hearing same. ECF No. 2120 at 15–17.

## DISCUSSION

The question before the Court is whether the Insurers currently have standing to bring the Motions to Seal and Motions to Disallow. The Court finds that, at this time, they do not.

### I. 11 U.S.C. § 1109 Standing

#### A. Legal Standard

Pursuant to the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The term "party in interest" is also used to establish the right to be heard in a bankruptcy proceeding: "[a] party in interest, including the debtor, the trustee, a creditors' committee, and equity security holders' committee, a creditor, and equity security holder, or any indenture trustee,

may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

"Neither Sections 101, 502, 1109 nor any other Section in the Bankruptcy Code defines the term 'party in interest.'" *In re Olympia Office LLC*, 574 B.R. 38, 46 (Bankr. E.D.N.Y. 2017). Instead, Congress decided that "[t]he rules and case law will determine who is a party in interest for purposes of objection to allowance." S. REP. NO. 95-989, at 62 (1978). Thus, the Court must look outside the Bankruptcy Code to determine whether the Insurers can be considered parties in interest.

"A 'party in interest' is broadly defined by the statute, but an entity that does not hold a financial stake in the case is generally excluded from the definition of 'party in interest.'" *In re MF Global Holdings Ltd.*, 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012) (citing 7 COLLIER ON BANKRUPTCY ¶ 1109.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011)). "[C]ourts have long recognized that the meaning of the term 'must be determined on an "*ad hoc*" basis,' and the categories mentioned in Section 1109 are 'not meant to exclude other types of interested parties from the purview of that section.'" *Savage & Assocs. P.C. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 60 (2d Cir. 2011) (quoting *In re Johns-Manville Corp.*, 36 B.R. 643, 747–48 (Bankr. S.D.N.Y. 1984)).

### B. Analysis

#### 1. *Truck Ins. Exch. v. Kaiser Gypsum Co.*

The arguments on both sides revolve around the Supreme Court's recent decision, *Truck Ins. Exch. v. Kaiser Gypsum Co.*, and its holding regarding the standing of insurance companies in an insured's bankruptcy proceeding under § 1109.

The decision in *Truck* is based upon the reorganization plan proposed by the debtors, Kaiser Gypsum Company, Inc., and Hanson Permanente Cement, Inc. *Id.* at 274. Truck Insurance Exchange, the primary insurer of both debtors, was the only party that did not support the proposed plan. *Id.* at 275.

> Truck is contractually obligated to defend each covered asbestos personal injury claim and typically indemnify the Debtors for up to $500,000 per claim. The Debtors have to pay a $5,000 deductible per claim, and assist and cooperate with Truck in defending against the claims. The Plan required the Bankruptcy Court to make a finding that the Debtors' conduct in the bankruptcy proceedings neither violated this assistance-and-cooperation duty nor breached any implied covenant of good faith and fair dealing (Plan Finding).
>
> The Plan treats insured and uninsured claims differently. Insured claims are filed "in the tort system to obtain the benefit of [the] insurance coverage." Id., at 241a. Truck has to defend these lawsuits, and if the claimant obtains a favorable judgment, the Trust pays the deductible and Truck pays up to $500,000 per claim. Uninsured claims, however, are submitted directly to the Trust for resolution. As part of that process, claimants have to identify "all other [related] claims" and file a release authorizing the Trust to obtain documentation from other asbestos trusts about other submitted claims. See 2 App. 428-431. These disclosure requirements are intended to reduce fraudulent and duplicative claims.

*Id.* at 275. Based upon this treatment, Truck objected to the plan. Nevertheless, the district court confirmed the plan over Truck's opposition and "concluded that 'Truck has limited standing to object to the Plan solely on the grounds that the Plan is not insurance neutral.'" *Id.* at 276 (quoting *In re Kaiser Gypsum Co.*, Case No. 20-00537, 2021 U.S. Dist. LEXIS 146354, at *27 (W.D.N.C. July 28, 2021)). The Fourth Circuit affirmed the district court's decision, and the Supreme Court granted certiorari. *Id.* at 276–77.

In *Truck*, the Supreme Court stated that it "granted certiorari to decide whether an insurer with financial responsibility for a bankruptcy claim is a 'party in interest' under § 1109(b)." *Id.* at 277 (citing *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 144 S. Ct. 325 (2023)). This was not the only instance in the decision where the Supreme Court made note of its focus on insurers with financial responsibility. *See, e.g., id.* at 271 ("The question in this case is whether an insurer *with financial*

-7-

*responsibility* for a bankruptcy claim is a 'party in interest' under [§ 1109(b)]." ) (emphasis added); *id.* at 277 ("Section 1109(b)'s text, context, and history confirm that an insurer such as Truck *with financial responsibility* for a bankruptcy claim is a 'party in interest' because it may be directly and adversely affected by the reorganization plan.") (emphasis added); *id.* at 281 ("An insurer *with financial responsibility* for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in these and many other ways, making it a 'party in interest' in those proceedings.") (emphasis added); *id.* at 284 ("The fact that Truck's financial exposure may be directly and adversely affected by a plan is sufficient to give Truck (and other insurers *with financial responsibility* for bankruptcy claims) a right to voice its objections in reorganization proceedings.") (emphasis added); *id.* at 284 ("Insurers such as Truck *with financial responsibility* for claims are not peripheral parties.") (emphasis added); *id.* at 285 ("An insurer *with financial responsibility* for bankruptcy claims is a 'party in interest' that may object to a Chapter 11 plan of reorganization.") (emphasis added). This emphasis on requiring a showing of financial responsibility aligns with the crux of the Supreme Court's analysis. "Where a proposed plan 'allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections address.'" *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. at 282 (quoting *In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 204 (CA3 2011)).

### 2. Factual Distinctions

To that end, there is currently a clear distinction between this case and *Truck*: there has been no proposed plan filed in this case. The Supreme Court's analysis in *Truck* relied heavily on the fact that Truck Insurance Exchange "will have to pay the vast majority of the Trust's liability" and "stand alone in carrying the financial burden." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602

-8-

U.S. at 281–82. And it is "[t]hat potential financial harm—attributable to Truck's status as an insurer with financial responsibility for bankruptcy claims—[that] gives Truck an interest in bankruptcy proceedings and whatever reorganization plan is proposed and eventually adopted." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. at 282. Yet here, no plan has been proposed, and the parties remain in mediation. There is nothing before the Court today that shows the Insurers' rights are in the crosshairs. The Insurers' concerns that their rights *will* be affected by a plan filed in the future is premature; there is no plan before the Court today that proposes to do so.

*Truck* is also distinguishable from the present matter in that Truck had accepted responsibility for the bankruptcy claims. In its reply brief to the Supreme Court, Truck noted that it "bears the financial burden of defending and paying 14,000 asbestos claims against Kaiser." Reply Brief for Petitioner at 11–12, *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268 (2024) (No. 21-1858). As such, Truck acknowledged financial responsibility under its insurance policies for certain claims against the debtors. Here, however, the Insurers have not accepted financial responsibility for claims against the Diocese. Thus, it is difficult to argue that *Truck* can be relied upon as a basis for finding standing in this case as it exists today.

### 3. Other Cases

Other cases cited by the Insurers in support of their arguments closely mirror the factual underpinnings of *Truck* and are unpersuasive in the present context. For instance, the Insurers rely upon Chief Judge Kinsella's decision in *The Roman Catholic Diocese of Syracuse* wherein she held "that liability does not need to be acknowledged or adjudicated before the teachings of *Truck* apply." *In re Roman Catholic Diocese of Syracuse*, 665 B.R. 866, 875 (Bankr. N.D.N.Y. 2024); *see also* ECF Nos. 2117, 2123 (citing same). This conclusion makes sense in the context of *Syracuse* because the diocese was "attempting to assign its interest in insurance claims and

recoveries against the Certain Insurers to the Trust." *In re Roman Catholic Diocese of Syracuse*, 665 B.R. at 866. Thus, it did not matter whether the insurance companies in that case had acknowledged liability; the proposed plan threatened to affect their rights, and therefore they had a right to be heard. But here, no plan has even been proposed, let alone one that specifically proposes to affect the Insurers' rights.

Many of the other cases relied upon by the Insurers framed the standing of insurance companies where their rights were being affected via a proposed plan. *See, e.g., In re Global Indus. Techs.*, 645 F.3d 201, 204 (3d Cir. 2011) ("The decision we announce is no more far-reaching than this: when a federal court gives its approval to a plan that allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 158–59 (D.N.J. 2005) ("In this case, Insurers' standing is appropriate . . . because the plan is not insurance neutral: [t]he principal source of funding for the Plan Trust (and distributions to asbestos claimants) is insurance proceeds."); *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 887 (9th Cir. 2012) ("This injury is traceable to the plan. It is only because of the plan that Appellants' contractual rights and expectations were changed.").

The Insurers also liken their position to the factual scenario in this Court's previous decision on standing in *In re Prime Capital Ventures, LLC*, Case No. 24-11029, 2025 Bankr. LEXIS 37 (Bankr. N.D.N.Y. Jan. 10, 2025). *See* ECF No. 2117 at 20; ECF 2145 at 5; ECF No. 2149 at 9–10. The situation in *Prime*, however, is readily distinguishable. In *Prime*, this Court found that Kris Daniel Roglieri ("Roglieri") had standing under § 1109 because "his pecuniary interest . . . will be directly affected by the outcome" of the proposed abandonment. *In re Prime Capital Ventures*, 2025 Bankr. LEXIS 37, at *11. Roglieri was also a codebtor in *Prime* and was

-10-

virtually guaranteed to be saddled with unsatisfied debts. *See id.* at *11–12; *see also id.* at *16, note 14 (noting that "Prime's liabilities would almost certainly outweigh its total assets"). In this case, the Insurers' pecuniary interest will not be directly affected by not permitting the Motions to Seal and Motions to Disallow. Whether the claims are allowed or disallowed will affect the Diocese's financial responsibility for them. Whether the Insurers will *thereafter* become financially responsible for the claims is dependent on a finding that the claims in question fall under the relevant insurance policies "subject to the terms, conditions, and exclusions thereof." ECF No. 2145 at 19 (parentheses omitted).

### 4. Insurers' Arguments

Hartford argues in its brief that it "has already been asked to fund the proofs of claim to which it objects" and therefore has standing. ECF No. 2117 at 9. However, Hartford has *not* formally accepted responsibility to pay said claims nor has it been implicated to pay said claims pursuant to a proposed plan of reorganization. Any request from the Diocese or Tort Committee that the Insurers pay these claims is merely that: a request. Nothing at this time binds the Insurers to funding these claims, and so it cannot be said that they have financial responsibility for them.

Furthermore, the Insurers are not even obligated to pay the claims even if they are found to be valid as against the Diocese. Hartford notes that "Hartford only has a duty to indemnify the [Diocese] for a claim if the [Diocese] has a legal obligation to pay that claim *and that claim is otherwise covered by the Hartford Policies*." ECF No. 2117 at 11 (emphasis added). "Subject to slight variations in policy language, each of the Hartford Policies provides that Hartford will pay only for those sums 'which [the [Diocese]] shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence,' which must be an 'accident.'" ECF No. 2117 at 10 (citing Hartford Fire Insurance

Company Policy No. 01 SMPF 18591 (Sept. 1, 1973 to Sept. 1, 1976) at Form MLB-202, Coverage – Bodily Injury and Property Damage Liability). Thus, even if the Court were to find that a claim was allowed, Hartford would still not be obligated under its insurance policies unless and until the conditions of the policies were found to have been met.

LMI raised a similar argument in its brief, claiming that "denial of their right to object to facially invalid claims threatens LMI's right to show that payment for such invalid claims is not covered under LMI Policies." ECF No. 2123 at 13. Additionally, LMI argues that "[o]nce facially invalid claims are allowed under § 502(a) and incorporated into a confirmed plan, application of the cited Second Circuit precedent could preclude LMI from relitigating the Debtor's underlying liability for such claims in subsequent coverage actions." ECF No. 2123 at 13–14 (citing *Sure-Snap Corp. v. State St. Bank & Tr. Co.*, 948 F.2d 869, 873 (2d Cir. 1991)). These arguments put the cart before the horse. Before the Insurers can claim a potential injury due to the *res judicata* effects of a confirmed plan, there must be a confirmed plan. Here, a plan has not yet been proposed by the Diocese or any other party. Without a plan, the Court cannot determine whether the Insurers' rights will be affected by same and thereby confer standing to them.

The issue of insurance coverage in relation to these claims has been raised in a pending adversary proceeding brought by the Diocese and various parishes.[5] *See The Roman Catholic Diocese of Albany, New York, et al. v. Certain Underwriters at Lloyd's, London, et al*, Case No.

---

[5] On November 28, 2023, the adversary proceeding was referred to global mediation. *The Roman Catholic Diocese of Albany, New York, et al. v. Certain Underwriters at Lloyd's, London, et al.*, Case No. 23-90012, ECF No. 36 (Bankr. N.D.N.Y. Nov. 28, 2023). On January 19, 2024, Interstate Fire & Casualty Company moved to withdraw the reference to District Court. *The Roman Catholic Diocese of Albany, New York, et al. v. Certain Underwriters at Lloyd's, London, et al.*, Case No. 23-90012, ECF No. 75 (Bankr. N.D.N.Y. Jan. 19, 2024). On October 29, 2024, the District Court issued a decision denying the withdrawal. *The Roman Catholic Diocese of Albany, New York, et al. v. Certain Underwriters at Lloyd's, London, et al.*, Case No. 23-cv-1654, ECF No. 5 (N.D.N.Y. Oct. 29, 2024). The parties are still in mediation at this time.

23-90012 (Bankr. N.D.N.Y. Oct. 31, 2023). The Insurers cannot claim to be obligated to pay for these claims while simultaneously maintaining that they may not be obligated under their policies.

The Insurers do not focus on the Supreme Court's "financial responsibility" language, instead arguing "[t]he '*potential* financial harm' that insurers face is sufficient to give them 'an interest in bankruptcy proceedings and whatever reorganization plan is proposed and eventually adopted.'" ECF No. 2117 at 14 (quoting *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. at 282); *see also* ECF No. 2123 at 18 ("[*Truck*] established that insurers are parties in interest under Section 1109(b) because they have potential financial responsibility for covered bankruptcy claims."). This reliance on the potential for harm is misplaced. As discussed *supra*, the Supreme Court made it clear in *Truck* that it was addressing the issue of standing for insurance companies that already have financial responsibility for bankruptcy claims. *See, supra* at Section I(B)(1). Also elaborated upon previously, the Insurers' financial responsibility is not directly contingent upon the allowance of these claims. "Here, the [Diocese] asserts that Hartford must pay the abuse claims tendered to Hartford which the Debtor becomes 'legally obligated to pay.'" ECF No. 2117 at 14. Absent a concession on the part of Hartford or an adjudication, the Diocese's assertion does not create a binding obligation for Hartford to pay these claims. As stated previously, the allowance of a claim creates an obligation for the Diocese, *not* the Insurers; that obligation is not real until either the Insurers concede liability or are otherwise adjudicated to be responsible. *See, supra* at Section I(B)(3). Thus, the Insurers currently face no financial responsibility in the claim objection context.

### 5. Further Considerations

The Court's interpretation of *Truck* and its progeny—that an actual financial responsibility is required to confer standing—computes logically. As the Court stated on the record, it is difficult to "understand how [the Insurers] create the thread that [the Insurers] have standing when [they]

have nothing at stake, [they] have no skin in the game." ECF No. 2062 at 43:42. Such a stance by the Insurers would seemingly be paradoxical: insurance companies could claim standing because they are likely to contribute to the bankruptcy distribution while simultaneously claiming they are under no obligation to make said contribution.

> But [*Truck*] certainly need not be read to say that an insurer has an unlimited right to be heard on every and any issue that might arise in a its insured's bankruptcy case. In this Court's view, the question a bankruptcy court faces after Truck Insurance is fundamentally the same one that many bankruptcy courts faced before it — how to calibrate an insurer's right to participate and be heard in its insured's bankruptcy case so as to permit the insurer to protect its legitimate interests, without permitting an insurer (or any party in interest, for that matter) to weaponize its procedural rights so that they can be used for tactical advantage in other disputes.

*In re AIO US, Inc.*, Case No. 24-11836, 2025 Bankr. LEXIS 1369, at *8–9 (Bankr. D. Del. Jun. 6, 2025). The Insurers cannot establish standing without something more, be it an affirmative commitment to provide plan funding or official recognition of a legal obligation to creditors. Doing so would only stand to further stymy efforts between the parties and delay what will hopefully be a consensual resolution of this case.

> The Diocese notes in its papers that:
>
> The Insurers in the two trial-ready cases have actively participated in the conferences with Judge Corcoran, including settlement discussions in those actions. The Insurers in the other six test cases (principally Hartford) have paid the Debtor's defense costs in those actions pursuant to the terms of the applicable policies.

ECF No. 2142 at 7.[6] While this behavior is indicative of the Insurers cooperation in this and related proceedings, it is insufficient to establish the requisite standing to bring the Motions to Seal and Motions to Disallow. The Insurers' involvement in the state court proceedings is not evidence of a binding obligation or admission of policy coverage. *See* ECF No. 2142 at 6 (acknowledging that

---

[6] The Diocese also notes that the Insurers "actively participated in the defense, discovery and resolution, including paying settlements" of actions commenced prior to the filing of this bankruptcy. ECF No. 2142 at 6. However, the Court cannot ascribe standing to the Insurers for acts performed prior to the bankruptcy case when the Insurers currently maintain their lack of binding obligations.

-14-

the insurance companies have reserved their rights under the relevant policies); ECF No. 2149 at 10 (noting that this participation is evidence of "*potential* financial responsibility") (emphasis in original). Thus, their involvement and contributions to the proceedings at this point are wholly voluntary. Should the Insurers decide tomorrow that it is in their best interests to not cooperate, they would have every right to cease participation in the state court proceedings and settlement conferences until their coverage obligations are determined. As such, the Insurers are not truly "responsible" until there is a binding commitment to be financially responsible for the payment of these claims.

Further, there is nothing in this decision that would prevent the Insurers from filing new Motions to Seal and Motions to Disallow if and when they assume financial responsibility in this case.[7] The determination of whether an insurance company should be considered a party in interest is dependent upon the facts at the time the issue is raised. Any plan that is proposed may call upon the Insurers to contribute financially or otherwise affect their rights. Should the Insurers be found liable for certain claims or commit to funding the plan, the question of their status can certainly be renewed. But here, with the facts as they are, the Insurers cannot be considered parties in interest.

## II.     Other Standing Requirements

Because the Court finds the Insurers lack standing under § 1109, it need not delve into the question of whether they have constitutional and prudential standing to bring these motions. Nor does the Court need to address the Insurers' argument that these standing requirements are inapplicable in the bankruptcy context.

---

[7] There is also nothing preventing the Diocese itself from bringing objections to these claims if it agrees with the Insurers that they are facially invalid.

### III. Equitable Discretion

Similarly, the Tort Committee's argument that the Court's use of its equitable discretion in this matter need not be addressed given the Court's determination that the Insurers' lack standing.

### CONCLUSION

At this point in time, the Insurers have not shown the requisite financial responsibility under *Truck* to establish standing to pursue the Motions to Seal and Motions to Disallow. The Court recognizes the potential for these parties to gain standing in the future—either via an admission of coverage, the impact of a proposed plan or something else. But this Court must look at the present status of the case to determine whether financial responsibility exists and finds that it does not. Now, after due deliberation and for the reasons stated herein, it is hereby

**ORDERED**, that the Motions to Seal are denied; and it is further

**ORDERED**, that the Motions to Disallow are denied.

Dated: September 3, 2025
Albany, New York

/s/ Robert E. Littlefield, Jr.
Robert E. Littlefield, Jr.
United States Bankruptcy Judge