**Office of the New York State**                         **Letitia James**
**Attorney General**                                                                                                **Attorney General**

October 27, 2025

**VIA ECF**
Hon. Patrick J. Radel
U.S. Bankruptcy Court
Northern District of New York
James T. Foley United States Courthouse
445 Broadway
Albany, New York 12207

    Re:    The Roman Catholic Diocese of Albany, New York (the "Debtor")
              Chapter 11 Case No. 23-10244
              Planned Conference 10/30 re: proposed Harmon settlement by Diocese of Albany.

Dear Judge Radel:

I write on behalf of the Office of the New York Attorney General to request the opportunity to appear and speak on Thursday, 10/30, at the planned 105 conference concerning the Harmon and The National Catholic Carrier Risk Retention Group proposed settlements.

The Office of Attorney General shares the concerns raised in the letter submitted by Paul Levine on behalf of the Official Committee of Unsecured Creditors ("Committee"). That Committee includes representatives of St. Clare's pension claimants. As Mr. Levine states "as a practical matter the overwhelming majority of its constituents are the pensioners of St. Clare's Hospital who have been deprived of their hard-earned pension benefits. . .".

The Consolidated Action by the Hartshorne plaintiffs and the Attorney General is scheduled to commence trial in the Schenectady County Supreme Court on November 3, 2025. In that action, counsel for the Hartshorne plaintiffs represent about 175 individual pensioners out of 1100 affected pensioners. In that action, the Attorney General has asserted that breaches of fiduciary duty by the Debtor and by employees and agents of the debtor resulted in 600 individuals losing the entirety of their promised and vested benefits, and 500 losing 30% of their vested and promised benefits. In the Consolidated Action, the Supreme Court has held that promised pension benefits are "wages" under New York law. In trial, the jury will determine the liability and

calculate sums due from the individual defendants (including both the current and former bishops of the Debtor, (who served on the board of St. Clare's and held officer titles at the relevant times) and the Debtor for the failure to pay the promised wages. The Attorney General seeks payment of the benefits by St. Clare's Corporation through recovery from the individual defendants and the Diocese.

The Committee and the Attorney General share similar concerns about the harm to St. Clare's pensioners and the need for redress, but the Attorney General has a unique role and responsibility in this matter. Under New York laws including the Estates, Powers, and Trusts Law, "EPTL"), the Not-For-Profit Corporation Law("N-PCL") and the Religious Corporations Law ("RCL") the Attorney General has specific responsibility for the proper administration of charitable assets, for protection of the charitable purpose and mission, and for the proper performance by charitable fiduciaries of their responsibilities, including their responsibility to assure compliance with governing law. The Attorney General's regulatory responsibility continues for charitable and religious entities and their fiduciaries when an entity is involved in bankruptcy proceedings.

EPTL § 8-1.4(m) broadly empowers OAG to "institute appropriate proceedings to secure compliance with this section and to secure the proper administration of any trust, corporation, or other relationship to which this section [i.e., EPTL § 8-1.4] applies." *Id.* § 8-1.4(m) , EPTL § 8-1.4(m) specifies that "[t]he powers and duties of the attorney general provided in this section are in addition to all other powers and duties he or she may have." Id. Section 8-1.4 additionally provides that it "shall be liberally construed so as to effectuate its general purpose of protecting the public interest in charitable uses, purposes and dispositions." Id. § 8-1.4(n).

It was under this authority, among others, that the Attorney General brought this action on behalf of the People, and against the Debtor and its officers, in 2022.

The appropriate coordination of the Attorney General's regulatory responsibility to protect the public interest in charitable "uses, purposes, and dispositions" and this Court's jurisdiction under the Bankruptcy Code is complex and has been the subject of extensive litigation in other courts.

The Office of Attorney General would like to participate in discussions with the parties and the Court concerning the appropriate procedure to evaluate and determine the claims and allocate assets recoverable in the bankruptcy proceedings in order to assure that the tort claimants and the pensioners have a fair opportunity to present and be heard, and that this Court has the benefit at the appropriate time in these proceedings concerning the fairness of any disposition of assets of the debtor, and the exercise of fiduciary responsibilities by debtor fiduciaries.

Two letters recently filed by the Debtor with this Court concerning the settlements with Michael Harrow and National Catholic Risk Retention Group raise serious questions about assuring fairness of process, opportunity to be heard, and potential violations of the New York regulatory structure governing charities.

The first letter at issue is at Doc. No. 2261, which advised the Court of a settlement reached in an Albany County Supreme Court tort action between plaintiff Michael Harmon and the Debtor in which the Debtor agreed to allow Mr. Harmon entry of a judgment of $8,000,000 against the Debtor. In this Settlement Agreement, the Debtor agrees that any proceeds recovered from "the applicable Insurers shall be held in escrow in the attorney trust account of Stinson LLP, as counsel for the Official Committee of Tort Claimants, for the sole benefit of holders of allowed CVA Claims and subject to further Bankruptcy Court order." See Doc. No. 2261-1, § 3. Paragraph 1 of the Settlement Agreement requires Debtor to bring a motion for approval before this Court under Fed. R. Bankr. Pro. 9019. The Attorney General would appreciate the opportunity to participate in this Court's proceedings to determine whether this appropriation of an asset of the estate to one class of creditors should be permitted prior to this Court's evaluation of the assets of the estate available to creditors and the claims of all creditors.

In the second letter, at Doc. No. 2271, the Debtor advised the Court that it had reached a settlement with one of its insurance carriers, The National Catholic Risk Retention Group, Inc. ("TNCRRG") which required the payment by TNCRRG of $1,000,000 "to the trust ... for the benefit of CVA Claimants holding allowed claims to be established pursuant to a Reorganization Plan." See Doc. No. 2271. This settlement by the debtor (and presumably by its charitable fiduciaries) also allocates assets of the estate to one class of creditors of the charitable debtor prior to proposal or approval of any plan by the creditors or this Court. The Debtor has not disclosed to date whether it is a shareholder of that entity, or whether it holds either voting or nonvoting stock. However, TNCRRG's website represents that "eligible shareholders" include Catholic dioceses, and that Class B shareholders receive shares "in proportion to the amount of capital contribution and the amount of premium paid by the shareholder or insured." (nationalcatholic.org, visited October 24 2025). TNCRRG represents that is a 501(c)(3) tax exempt organization, but it is exempt from filing annual returns because of its affiliation with the Catholic Church. It is also exempt under the Liability Risk Retention Act, 15 U.S.C. 65 from filings with state insurance regulators apart from its Vermont domicile.(See V.S.A. 3561), because risk retention groups can operate nationwide without meeting state licensing rules after qualifying in one state. The Attorney General believes that any consideration of this settlement should include prior evaluation of related party and conflict of interest issues under New York charities law for the Debtor and its fiduciaries, and evaluation of the personal interest of fiduciaries of the debtor in treatment the claims of one class over another.

We agree with Mr. Levine, counsel for the Unsecured Creditors Committee, that both proposed settlements also " implicate a critical issue that this Court will . . . need to address: whether all unsecured creditors of the Debtor's estate . . . may share in recoveries obtained from insurance carriers, parishes, and other entities within the Catholic community, in addition to sharing in contributions made directly by the Debtor to the overall pool of funds available to satisfy creditor claims.

In our view, the Court and the parties need the benefit of the disclosure statement, voting and confirmation process, prior to any unilateral allocation by the Debtor of property of the estate

to the benefit one group of creditors over another where there has been no court determination as to sources, rights, and uses of funds.

In its regulatory role, the Office of Attorney General is not at this time expressing a view on the ultimate rights to and allocation of charitable assets among creditors. However, we believe that an orderly process, properly overseen by the Court with the participation of the creditors and the Debtor, including opportunity for discovery and full disclosure by all parties, better serves the interest of the charitable entities involved and the duties of its charitable fiduciaries.

We would therefore very much appreciate an opportunity for the Attorney General to participate in the conference on October 30 and in proceedings related to consideration of these two proposed settlements.

Respectfully,

*J. B. Sheehan*

James Sheehan
Chief, Charities Bureau
(518) 776-2158


cc:   All ECF Parties via ECF