So Ordered.

Signed this 30 day of April, 2026.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:                                          :
                                                :
THE ROMAN CATHOLIC DIOCESE                      :
OF ALBANY, NEW YORK,                            :
                                                :          Case No. 23-10244-1 (PGR)
                              Debtor.           :          Chapter 11
                                                :
_____:

APPEARANCES:

WHITEMAN OSTERMAN & HANNA, LLP          FRANCIS J. BRENNAN, ESQ.
*Counsel for Debtor*
80 State Street, 11th Floor, Albany, New York 12207


WILLIAM K. HARRINGTON, U.S. TRUSTEE          ALICIA M. LEONARD, ESQ.
*Office of the United States Trustee, Region 2*
11A Clinton Avenue, Room 620, Albany, New York 12207


LEMERY GREISLER, LLC          MEGHAN M. BREEN, ESQ.
*Counsel for the Official Committee of Unsecured Creditors*
677 Broadway, 8th Floor, Albany, New York 12207


STINSON LLP          ROBERT T. KUGLER, ESQ.
*Counsel for the Official Committee of Tort Claimants*
50 South 6th Street #2600, Minneapolis, Minnesota 55402


MORITT HOCK & HAMROFF, LLP          THERESA A. DRISCOLL, ESQ.
*Special Counsel to the Office of the New York State Attorney General
on behalf of the St. Clare's Pensioners*
400 Garden City Plaza, Garden City, New York 11530

1

AARP FOUNDATION                                VICTORIA WILLIAMSON, ESQ.
*Counsel for the Hartshorne Plaintiffs*
601 E Street NW, Washington, DC 20049

**MEMORANDUM-DECISION AND ORDER
GRANTING JOINT MOTION TO AUTHORIZE GROUP CLAIM
AND DENYING MOTION TO ESTABLISH CLAIMS BAR DATE AND
APPROVE FORM AND NOTICE OF CLAIMS BAR DATE**

In December of 2025, a jury in Schenectady, New York awarded $54.2 million to 1,124 former employees of St. Clare's Hospital. The jury found that several defendants, including two former bishops of the Roman Catholic Diocese of Albany, failed to properly administer the hospital's pension plan. The Diocese is liable for this award, subject to a pending appeal.

The New York State Attorney General, working in collaboration with the AARP Foundation, litigated the former employees' case, obtained the verdict, and is defending the appeal in state court. On March 19, 2026, the Attorney General filed a proof of claim (the "Group Claim") in this bankruptcy case on behalf of the former employees of St. Clare's (the "St. Clare's Pensioners").

Presently pending is a Joint Motion by the Attorney General and AARP, on behalf of the St. Clare's Pensioners, for allowance of the Group Claim. (Docket No. 2518). The Diocese, supported by the Official Committee of Tort Claimants (the "Tort Committee"),[1] opposes the Joint Motion and seeks a traditional Chapter 11 claims solicitation and filing process. (Docket No. 2516).

For the reasons that follow, this Court grants the Joint Motion — allowance of the Group Claim is permissible, efficient, and equitable. The Diocese's motion for a

---

[1] The Tort Committee represents the interests of individuals asserting clerical sexual abuse claims.

2

claims bar date and traditional claims noticing and filing procedures is denied as moot.

## JURISDICTION

This Court has core jurisdiction over the parties and the subject matter of this contested matter under 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

The Diocese is a not-for-profit corporation canonically established in 1847 and incorporated pursuant to a special act of the New York Legislature in 1941. (Docket No. 6, at ¶ 2, 7). The Diocese, by and through its offices, parishes, and ministry entities, provides religious services and performs charitable work across fourteen counties in upstate New York. *Id.* at ¶ 19-54.

The Diocese is a defendant in hundreds of lawsuits brought by individuals asserting claims of clerical sexual abuse. *Id.* at ¶ 72.

In addition, the Diocese is a defendant in two lawsuits alleging breach of contract and breach of fiduciary duty regarding the management and funding of the pension fund intended for the benefit of employees of St. Clare's Hospital. *Id.* at ¶ 80. The first lawsuit was filed in September of 2019 by Mary Hartshorne and 174 other pensioners. (Docket No. 2518-2, at 2). The second suit was filed in May of 2022 by Letitia James, the Attorney General of the State of New York. (Docket No. 2518-2, at 3). The cases were consolidated for all purposes by the Honorable Vincent W. Versaci, Acting Justice of the New York State Supreme Court. *Id.*

On March 15, 2023, the Diocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Docket No. 1).  In May of 2023, the Official Committee of Unsecured Creditors moved for relief from the automatic stay to allow the consolidated St. Clare's lawsuit to proceed in state court to a determination of liability and damages. (Docket No. 185).  The Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, granted that motion in an Order dated June 15, 2023.[2] (Docket No. 265).

On July 13, 2023, the Diocese moved for an Order extending and establishing a claims bar date and approving the form and manner of notice of the bar date (the "first bar date motion"). (Docket No. 334).  The first bar date motion excluded the St. Clare's Pensioners due to the pendency of the state court case. (Docket No. 334, ¶ 16-17).

Judge Littlefield granted the first bar date motion in an Order dated August 23, 2023. (Docket No. 445).  In pertinent part, the Order provided that the claims bar date for St. Clare's Pensioners would "be set by further Court Order." (Docket No. 445, at 3).

The St. Clare's lawsuit was tried before a jury in November and December of 2025, with Justice Versaci presiding. (Docket No. 2518-2, at p. 3).  The jury returned a verdict finding that the St. Clare's Pensioners were entitled to $54.2 million in damages. (Docket No. 2518-2, at ¶ 9).

---

[2] This case was assigned to this Court on October 1, 2025, upon Judge Littlefield's retirement.

The jury did not find the Diocese directly liable. (Docket No. 2518-2, at ¶ 4-5). However, the jury determined that several of the named defendants (including two former bishops of the Diocese) were employees or agents of the Diocese and committed wrongful conduct in furtherance of the Diocese's business and within the scope of their employment or agency. (Docket No. 2518-2, at ¶ 6).

The parties dispute the impact of this aspect of the verdict. In a post-trial Order dated December 23, 2025, Justice Versaci found that the Diocese was vicariously liable based upon the jury's scope of employment findings. (Docket No. 2518-2, at ¶ 6-7). The Diocese is pursuing an appeal before the New York State Supreme Court, Appellate Division, Third Judicial Department. (Docket No. 2516, at ¶ 10).

On March 19, 2026, the Diocese moved to establish a claims bar date and approve the form and manner of notice for claims by the St. Clare's Pensioners. (Docket No. 2516). The Official Committee of Unsecured Creditors (Docket No. 2542), along with the New York State Attorney General and AARP Foundation (Docket No. 2544) opposed the motion. The Diocese filed a Reply in further support of is motion. (Docket No. 2559).

Also, on March 19, 2026, Monica A. Connell, Esq., Assistant Attorney General and Special Litigation Counsel to the New York State Attorney General, filed the Group Claim on behalf of the St. Clare's Pensioners. (Docket No. 2518, Ex. A).

Immediately thereafter, the Office of the Attorney General and AARP Foundation, by and through counsel, filed the Joint Motion to Authorize Group Claim

5

on behalf of the St. Clare's Pensioners. (Docket No. 2518). The Unsecured Creditors' Committee supports the motion. (Docket No. 2520).  The Diocese (Docket No. 2546) and Tort Claimants' Committee (Docket No. 2550) oppose it.  The Attorney General and AARP filed a reply in further support of the motion. (Docket No. 2557).

This Court heard oral argument on both motions in Albany, New York, on April 16, 2026, with appearances as indicated above, and reserved decision.[3]

**ANALYSIS**

### *Permissibility of a Group Proof of Claim*

Section 501(a) of the Bankruptcy Code provides, in pertinent part, that "[a] creditor … may file a proof of claim."  A "proof of claim" is defined as a "written statement of a creditor's claim." Fed. R. Bankr. P. 3001(a).  A proof of claim must be signed by "a creditor or the creditor's agent …." Fed. R. Bankr. P. 3001(b).

At least two courts have concluded that an authorized agent may file a single proof of claim on behalf of a group of creditors. *See In re Tronox Inc.*, No. 09-10156 (MEW), 2015 WL 3799702, at \*11 (Bankr. S.D.N.Y. June 17, 2015) (finding that a "group" claim filed by an "Ad Hoc Committee, which represented that it had authority to file the claim on behalf of the individuals listed therein," was "acceptable"); *Adair v. Bartholow (In re Great Western Cities, Inc. of New Mexico)*, 107 B.R. 116, 119 (N.D. Tex. 1989).

This Court finds this authority persuasive and concludes that a group claim is appropriate under the facts presented here.

---

[3] The Group Claim motion also sought a determination regarding the pensioners' right to vote on plan confirmation.  During oral argument, counsel for the Attorney General withdrew that request.

First, as the court in *Great Western Cities* recognized, "[n]either section 501 nor Rule 3001 prohibits an agent with authority from filing claims on behalf of a large group of individuals." *Great Western Cities*, 107 B.R. at 119.

In addition, Federal Rule of Bankruptcy Procedure 1001 provides that the procedural rules and official forms (which includes the proof of claim form) should be "construed, administered, and employed by both the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001(a); *see also Pepper v. Litton*, 308 U.S. 295, 307–08, 60 S. Ct. 238, 246, 84 L. Ed. 281 (1939) ("[I]n the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.").

Second, a group claim is particularly appropriate where, as here, the alternative would involve more than a thousand individual claims, imposing extensive expense upon the estate. *See Great Western Cities*, 107 B.R. at 119 ("The court finds no support for the absurd practice that would flow from a contrary rule, pursuant to which the bankruptcy court and clerk would be inundated by 2,500 separate proofs of claim rather than one or more documents that expressly identify each creditor."). The interests of efficiency favor allowing the Group Claim.

Third, allowing a group claim avoids accounting anarchy. The initial amount due to each pensioner was established in the state court. (Docket No. 2518, Ex. A, at 12-37). The pensioners are also entitled to interest on their initial award. (*Id.* at 9). Rather than relying on individual pensioners to accurately account for their initial

award and calculate interest, the Group Claim incorporates, and attaches, an exhibit from Justice Versaci's post-trial order, which identifies each pensioner and states the amount of their award. (Docket No. 2518, Ex. A, at 12-37). An anticipated amended claim will include interest calculated by an actuary retained to act on the pensioners' behalf. (Docket No. 2520, at ¶ 12). The interests of accuracy favor allowing the Group Claim.

Fourth, the claims solicitation process in a Chapter 11 case involving a large number of consumer claimants is cumbersome and confusing — a concern exacerbated here as many of the pensioners are advanced in age and have limited resources. (Docket No. 2518, at ¶ 13). Disallowing the Group Claim would either (1) require the Unsecured Creditors' Committee, Attorney General, and/or AARP to undertake the effort and expense of coordinating and facilitating the preparation and filing of more than one thousand individual claims to reach the exact same result as will be achieved by allowing the Group Claim or (2) risk that a pensioner or pensioners will not receive a distribution because they failed to receive notice, file a claim, complete the form properly, calculate their claim correctly, and/or submit the claim timely. The interests of equity favor allowing the Group Claim.

Fifth and finally, the Diocese and Tort Committee's suggestion that allowing the Group Claim will prejudice pensioners rings hollow. They posit a hypothetical pensioner who might object to a claim having been filed on their behalf.

The idea that a pensioner would object to the Attorney General securing a recovery for their benefit and safeguarding their right to that recovery in this

bankruptcy strains credulity. Some of the pensioners literally broke their backs caring for St. Clare's patients — many of them doubtlessly did so based on their belief in the hospital's Catholic charism — all of them definitely did so with the expectation of a promised pension.[4]

Moreover, the amount awarded to each pensioner is precisely fixed, explicitly stated in the Group Claim, and undisputed.[5]  As such, no pensioner would have a reason, or basis, for objecting to the amount assigned to them in the Group Claim.

The Diocese and Tort Committee also contend that the Group Claim raises a due process concern in that a pensioner may be unaware that a claim was filed on their behalf.  This Court does not share that concern, primarily due to the lack of identified prejudice to any of the pensioners, which stands in contrast to the potential prejudice inherent in imposing a traditional claims process.

However, out of an abundance of caution, the Attorney General is directed to mail a copy of the Group Claim to each of the St. Clare's Pensioners, along with a cover letter providing appropriate contact information in the event a pensioner has a question or concern.

### The Attorney General's Authority

The conclusion that a group claim is allowable and appropriate in this case is necessary, but not sufficient, to resolve the pending motions.  As noted above, subject

---

[4] When pressed at oral argument to support the claim of prejudice, Attorney Kugler envisioned a devout pensioner who would want the Diocese to retain the funds awarded to them in order to advance the Church's mission.  Nothing in this decision should be interpreted to find that any pensioner is compelled to cash a check they may receive in connection with this case.

[5] During oral argument, the Diocese confirmed that while it is appealing the verdict and finding of liability, it does not contest the damages calculation and/or allocation.

to exceptions not applicable here, "[o]nly a creditor or the creditor's agent may sign a proof of claim …." *See* Fed. R. Bankr. P. 3001(b).

Thus, this Court must determine whether the Attorney General was the pensioners' agent for purposes of filing the Group Claim.

 This Court answers in the affirmative.

Justice Versaci determined that the Attorney General had the authority under applicable state law to pursue the pensioners' claims against the defendants, including the Diocese. *People by James v. Roman Cath. Diocese of Albany*, 87 Misc. 3d 694, 713, 236 N.Y.S.3d 866 (N.Y. Sup. Ct. 2025).

Justice Versaci's decision is well-supported and consistent with applicable state law.  The Attorney General is charged with supervising non-profit corporations, which includes ensuring that their officers, directors, and trustees fulfill their fiduciary duties. *See* N.Y. Est. Powers & Trusts Law § 8-1.4.  The Attorney General is vested with the authority to seek monetary damages against "directors, officers, and key persons" to redress violations of their fiduciary duties. *See* N.Y. Not-for-Profit Corp. Law § 720; *see also* N.Y. Not-for-Profit Corp. Law § 112 (a)(7) & (a)(10).

The Attorney General is empowered to "institute appropriate proceedings" as needed to carry out her duties. *See* N.Y. Est. Powers & Trusts Law § 8-1.4(m).

The Attorney General was thus authorized to act as an agent on behalf of the St. Clare's Pensioners for the purpose of litigating their claims, establishing liability, defending the judgment, and recovering damages.

In opposing the Joint Motion, the Diocese and Tort Committee argue that the Attorney General's agency and authority stop at the federal courthouse door, which prevents her from protecting the pensioners' right to a recovery by filing a proof of claim on their behalf.

Nothing in the Bankruptcy Code or Rules requires (or recommends) such a result.

Moreover, courts have consistently recognized the ability of attorneys general to appear and act in bankruptcy proceedings on behalf of groups of consumer creditors. *See, e.g., In re DeFelice*, 77 B.R. 376, 379 (Bankr. D. Conn. 1987) (finding that "public policy considerations favor the conclusion that the Attorney General has standing to maintain [a non-dischargeability] proceeding on behalf of [the debtor's] consumer creditors"); *In re Hemingway*, 39 B.R. 619, 622 (N.D.N.Y. 1983) (finding that New York Attorney General had standing to bring non-dischargeability action on behalf of six consumers); *In re Livaditis*, 132 B.R. 897, 900 (Bankr. N.D. Ill. 1991) ("It is well established that state Attorney Generals may prosecute dischargeability actions under § 523(c) on behalf of injured creditors provided there is statutory authority under their state law to do so.") (collecting cases); *In re SCBA Liquidation, Inc.*, 489 B.R. 666, 687 (Bankr. W.D. Mich. 2013) (finding that state attorneys general were permitted to file representative breach of warranty claims on behalf of citizens); *see also generally In re Taibbi,* 213 B.R. 261, 271 (Bankr. E.D.N.Y. 1997) ("Even if the consumers could have filed their own discharge or dischargeability complaints

11

alleging claims under the consumer protection law, courts have granted standing to public agencies notwithstanding consumers' ability to commence their own actions.").

As one court aptly explained:

> State attorneys general are empowered under federal bankruptcy law to intervene on behalf of the consumer creditors for a reason: to ensure that the legal process results in the best possible resolution for the consumers without burdening each consumer with active participation (otherwise, many consumers would be marginalized, as meaningful participation may require personal legal expertise and sufficient resources to personally participate, or the financial wherewithal to obtain counsel to participate).

*In re U.S. Fidelis, Inc.*, 481 B.R. 503, 518 (Bankr. E.D. Mo. 2012).

This Court finds that the Attorney General's established authority to act as agent for the St. Clare's Pensioners in pursuing their claims, protecting their rights, and recovering their damages includes the authority to file a proof of claim on their behalf.

## CONCLUSION

The Joint Motion to Authorize Group Claim (Docket No. 2518) is GRANTED; the Motion for Order Establishing Claims Bar Date for St. Clare's Pensioners and Approving the Form and Notice of Claims Bar Date (Docket No. 2516) is DENIED as moot. Within fourteen (14) days of the date of this Memorandum-Decision and Order, the Attorney General shall mail a copy of the Group Claim to each of the St. Clare's Pensioners, along with a cover letter providing appropriate contact information in the event a pensioner has a question or concern.

###